UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VIVID SITES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16-cv-00117-JAR |
| ) | |
| TIMOTHY MILLSAP, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Timothy Millsap, Matthew Timme, Daniel Benninger, and Tri-State Equipment Company, Inc.'s ("Tri-State") (collectively, "Defendants") Motion to Dismiss Plaintiff Vivid Site, LLC's Second Amended Complaint ("SAC") and for an Award of Attorneys' Fees and Costs under the Copyright Act (Doc. 27), Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 30), Plaintiff's Motion for leave to file a Sur-reply in Opposition to Defendants' Motion to Dismiss (Doc. 33), and Plaintiff's Motion to Incorporate an Exhibit to its Third Amended Complaint (Doc. 35). As an initial matter, the Court will grant Plaintiff's Motion for Leave to file a Sur-reply (Doc. 33), and Motion to Incorporate an Exhibit to its Third Amended Complaint (Doc. 35). For the following reasons, the Court will grant in part and deny in part Defendants' motion to dismiss and for an award of attorneys' fees and costs (Doc. 27); and deny Plaintiff's motion for leave to file a third amended complaint (Doc. 30).

## I. Background

On January 29, 2016, Plaintiff filed its original complaint alleging, inter alia, that Defendants Millsap, Timme, and Benninger converted source code for Plaintiff's proprietary Content Management System and Ecommmerce Software ("VS-CMS") and other propriety software and materials belonging to Plaintiff (Doc. 1). According to Plaintiff, these Defendants also had accessed its hosting and database servers without its permission (Id.). In its original complaint, Plaintiff sought to assert three claims: (1) a copyright infringement claim under the Copyright Act, see 17 U.S.C. § 501 et seq.; (2) a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), see 18 U.S.C. § 1961, et seq., based on allegations that Defendants had committed mail and wire fraud; and (3) a RICO conspiracy claim which was also based on allegations of mail and wire fraud (Id.). Defendants moved to dismiss the original complaint, arguing, inter alia, that Plaintiff's copyright infringement claim was subject to dismissal because Plaintiff had not registered the VS-CMS source code with the Copyright Office before bringing suit (Docs. 16-17 & Attach.).

On March 22, 2016, Plaintiff filed its first amended complaint, seeking to assert four claims: (1) a copyright infringement claim; (2) a claim of unfair competition under Missouri law; (3) a RICO claim predicated on allegations of mail and wire fraud; and (4) a RICO conspiracy claim based on allegations of mail and wire fraud (Doc. 18). The next day, Plaintiff filed its second amended complaint ("SAC"), with Defendants' consent and the Court's leave (Docs. 22, 25-26).

In the now operative SAC, Plaintiff alleges the following facts (Doc. 22). Plaintiff is a Missouri limited liability company engaged in the business of designing and hosting websites, including the drafting of proprietary software that enables the creation, design, and hosting of

various websites. Defendants Millsap, Timme, and Benninger are all citizens of Missouri; Tri-State is a Missouri corporation. According to Plaintiff, between November 2012 and December 2015, Millsap, Timme, and Benninger "took with them," "misappropriated," and "transferred, converted and/or diverted" source code for VS-CMS, approximately forty of Plaintiff's "database backup service/files," and other propriety software and materials belonging to Plaintiff (Id. at ¶¶ 8-12, 15, 18-19). Plaintiff alleges that Millsap, Timme, and Benninger also accessed its hosting and database servers without its knowledge or permission, and they did so at Tri-State's request (Id. at ¶¶ 8-13). In its SAC, Plaintiff seeks to assert three claims: (1) a claim under the Missouri Uniform Trade Secret Act ("MUTSA"); (2) a RICO claim predicated on mail and wire fraud; and (3) a RICO conspiracy claim based on mail and wire fraud (Id. at ¶¶ 14-35). As to its RICO claims, Plaintiff alleges that Defendants Millsap, Timme, and Benninger "converted and/or diverted" VS-CMS and other trade secrets in furtherance of a "scheme," and that they "[o]n dates yet unknown put documents in furtherance of the scheme . . . in the U.S. Mail, and thereby committed the crime of Mail Fraud, as defined under 18 U.S.C. § 1341 by mailing the VS-CMS and trade secrets." (Id. at ¶¶ 27, 33). Plaintiff also claims that, in furtherance of a "scheme," Defendants Millsap, Timme, and Benninger "on dates yet unknown used the telephone and internet to transfer the Source Code and Trade Secrets of Vivid Sit[es], and thereby committed the crime of Wire Fraud, as defined under 18 U.S.C. § 1343 by transmitting the VS-CMS and trade secrets to Tri-State from Vivid Sites" (Id. at ¶¶ 28, 34).

Defendants now move to dismiss the SAC, and seek an award of attorney's fees under the Copyright Act (Doc. 27). Plaintiff opposes the motion, and alternatively, moves for leave to file a third amended complaint (Docs. 29-30). For the following reasons, the Court will dismiss the

3

SAC, deny Plaintiff's motion for leave to file a third amended complaint, and deny Defendants' request for fees and costs under the Copyright Act.

## II. Discussion

### A. Defendants' Motion to Dismiss the Second Amended Complaint

In support of their motion to dismiss the SAC, Defendants first argue that Plaintiff has failed to allege sufficient facts to support a claim under MUTSA (Doc. 28 at 5-10). Defendants further argue that Plaintiff has failed to state any viable RICO claims because (1) RICO claims cannot be predicated on claims of trade secret misappropriation; and (2) Plaintiff has not pleaded sufficient facts to support RICO claims predicated on allegations of mail or wire fraud under Rule 9 of the Federal Rules of Civil Procedure (Id. at 10-16).[1]

Plaintiff opposes Defendants' motion, arguing that it has alleged sufficient facts to support its MUTSA claim, and that it has adequately pleaded its RICO claims based on violations of the federal mail and wire fraud statutes (Doc. 29 at 6-9).[2]

In reply, Defendants reiterate their arguments that Plaintiff's MUTSA claim cannot serve as a RICO predicate act (Doc. 31). Defendants also note that Plaintiff does not dispute that Rule

---

[1] The parties dispute whether a RICO claim can be predicated on allegations of trade secret misappropriation or copyright infringement claims (Docs. 28 at 11-13; 28 at 8-9; 31 at 2-4; 33.1 at 2-3). The Court need not address this issue, as Plaintiff does not—in its original, first amended, second amended, or proposed third amended complaints—purport to assert a RICO claim predicated on a claim of trade secret misappropriation. Instead, Plaintiff has consistently and specifically identified the federal mail and wire fraud statutes as the predicate offenses on which it seeks to base its RICO claims (Docs. 1 at ¶¶ 26-27, 32-33; 18 at ¶¶ 29-30, 35-36; 22 at ¶¶ 27-28, 33-34; 30.2 at ¶¶ 33-34, 39-40). The parties also disagree as to whether Plaintiff's MUTSA claim is subject to dismissal because it is preempted by the Copyright Act. The Court need not resolve this issue given its dismissal of the SAC on other grounds.

[2] Plaintiff attached an affidavit by David Black, Plaintiff's CEO, to its memorandum in opposition to Defendant's motion to dismiss (Doc. 29.1); the parties dispute whether the Court should consider its contents. The Court has reviewed Mr. Black's affidavit, and concludes that none of the averments set forth therein would change the Court's rulings on any of the motions now pending before the Court.

4

9's heightened pleading requirement applies to its RICO claims, and argue that there is no independent basis to support federal jurisdiction over Plaintiff's MUTSA claim (Id.). In sur-reply, Plaintiff contends that its MUTSA claim is a predicate act under RICO, that it has met Rule 9's heightened pleading requirement by pleading its RICO claims with particularity, and that it has stated a cognizable MUTSA claim (Doc. 33.1). For the following reasons, the Court will dismiss the SAC.

### Plaintiff's RICO claims

First, the Court concludes that Plaintiff has failed to state viable RICO claims. "Section 1962 of the RICO Act makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009)). "RICO provides a private right of action for any person 'injured in his business or property by reason of' a violation of its substantive prohibitions." Dahlgren v. First Nat'l Bank of Holdrege, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18 U.S.C. § 1964(c)).

To establish a civil RICO claim, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). A "pattern of racketeering activity" requires the commission of at least two racketeering acts, or "predicate" offenses, over a ten-year period. 18 U.S.C. § 1961(5); see also Sedima, 473 U.S. at 488 (discussing "predicate acts").

Mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343, both qualify as "racketeering activity" under RICO. See 18 U.S.C. § 1961(1). A plaintiff

5

seeking to state a civil RICO claim predicated on allegations of mail or wire fraud must, consistently with Rule 9, "state with particularity the circumstances constituting [the] fraud." See Fed. R. Civ. P. 9(b); Crest Constr. II, 660 F.3d at 353, 358 (applying Rule 9's particularity requirement to allegations of mail and wire fraud underlying civil RICO claim); Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs., Co., 48 F.3d 1066, 1069-70 (8th Cir. 1995) (same). In other words, a plaintiff must plead the "who, what, when, where, and how" of his RICO claims. Crest Constr. II, 660 F.3d at 353 (quoting Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011)).

The elements of mail fraud under 18 U.S.C. §1341 are "(1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) that the mail was used in furtherance of some essential step in the scheme." United States v. Louper-Morris, 672 F.3d 539, 555 (8th Cir. 2012) (quoting United States v. Bryant, 606 F.3d 912, 917 (8th Cir. 2010)). A scheme to defraud "need not be fraudulent on its face, but 'must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" United States v. Goodman, 984 F.2d 235, 237 (8th Cir. 1993) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991)). Notably, the scheme must involve some affirmative misrepresentation or active concealment manifesting an intent to deceive. Id. (citing United States v. McNeive, 536 F.2d 1245, 1251 (8th Cir. 1976)); see also Goodman, 984 F.2d at 237 ("[T]he essence of a scheme is a plan to deceive persons as to the substantial identity of the things they are to receive in exchange."). A defendant's use of the mail, standing alone, is insufficient to support a RICO claim predicated on allegations of mail fraud. See Louper-Morris, 672 F.3d at 556; Dahlgren, 533 F.3d at 689. "The elements of wire fraud under 18 U.S.C. § 1343

6

are identical to the elements of mail fraud except that wire fraud involves interstate wire communications rather than mail." United States v. Cole, 721 F.3d 1016, 1021 (8th Cir. 2013) (citing Louper-Morris, 672 F.3d at 555).

The Court concludes that Plaintiff has failed to state a RICO claim predicated on allegations of mail fraud, as it has not alleged that Defendants participated in a scheme to defraud Plaintiff. See Louper-Morris, 672 F.3d at 555. In the various iterations of its complaint, Plaintiff has alleged that Defendants stole, misappropriated, transferred, and converted its intellectual property. It has not, however, alleged that Defendants fraudulently misrepresented any material fact or actively concealed a material fact in connection with the theft of Plaintiff's intellectual property. Goodman, 984 F.2d at 237. Plaintiff also has not identified who utilized the mail, what was placed in the mail, or when the mail was used in furtherance of the alleged scheme. See Crest Constr. II, 660 F.3d at 359 (district court properly dismissed RICO count predicated on allegations of mail and wire fraud because complaint did not identify the "who, where, when and how" of the alleged fraud); Nitro Distrib., 565 F.3d at 428-29 (RICO claim was properly dismissed for failure to set forth predicate acts of mail and wire fraud where complaint alleged in very general terms that the defendant engaged in racketeering that "involved the use of the interstate telephone and the U.S. mails on a number of occasions").

The Court also concludes that Plaintiff has failed to state a viable RICO claim predicated on its allegations of wire fraud. See Crest Constr. II, 660 F.3d at 359; Nitro Distrib., 565 F.3d at 428-29. Specifically, Plaintiff has not alleged any facts to support an inference that Defendants participated in a scheme whereby they sought to defraud Plaintiff by means of material false representations or promises, that they made any false representations or promises in connection with the scheme, or that they used telephones or the internet in furtherance of the scheme. See

7

Cole, 721 F.3d at 1021; Goodman, 984 F.2d at 237. In addition, Plaintiff has alleged in general terms that "[i]n a scheme using interstate telephone lines" Defendant's Millsap, Timme, and Benninger "transferred, converted and/or diverted" Plaintiff's intellectual property; it has not, however, identified the "who, what, or when" of any use of a telephone or the internet in furtherance of the scheme. Crest Constr. II, 660 F.3d at 359; Nitro Distrib., 565 F.3d at 428-29. Thus, Plaintiff's RICO claims are subject to dismissal because they do not adequately allege a pattern of racketeering, i.e., that Defendants committed at least two racketeering acts, or "predicate" offenses, over a ten-year period. See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008) (failure to establish any element of a RICO claim means the entire claim fails). Given its failure to plead the requisite predicate acts necessary to support RICO claims based on its allegations of mail and wire fraud, Plaintiff's RICO conspiracy claim is also subject to dismissal for failure to state a claim. Beck, 529 U.S. at 504-06 (RICO conspiracy claim requires pleading of predicate acts).

### Plaintiff's Claims under Missouri Law

In light of the dismissal of Plaintiff's federal RICO claims, and in the interests of judicial economy, convenience, fairness and comity, the Court will decline to exercise its supplemental jurisdiction over Plaintiff's MUTSA claim, which seeks relief under Missouri law. See Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1141 (8th Cir. 2014) (after dismissing all claims over which it has original jurisdiction, a district court nevertheless maintains broad discretion to exercise supplemental jurisdiction over remaining state law claims); Crest Constr. II, 660 F.3d at 359 (affirming district court's decision not to exercise supplemental jurisdiction over remaining state law claims after it dismissed the only claim over which it had original jurisdiction, a RICO claim); Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1249 (8th Cir.

8

2006) (discussing factors district courts should consider when deciding whether to exercise supplemental jurisdiction after dismissing all federal claims). For the aforementioned reasons, the Court will dismiss Plaintiff's SAC in its entirety.

### B. Plaintiff's Motion for Leave to File a Third Amended Complaint

In lieu of dismissal of this action, Plaintiff seeks leave to amend its complaint for a third time (Doc. 30). In its proposed third amended complaint ("TAC"), Plaintiff seeks to assert five claims: (1) a MUTSA claim; (2) a copyright infringement claim under the Copyright Act; (3) a RICO claim predicated on mail and wire fraud; (4) a RICO conspiracy claim based on mail and wire fraud; and (5) a claim of unfair competition under Missouri law (Doc. 30.2). Plaintiff has attached to its proposed TAC (1) a copy of its application for registration of "VividSites CMS (VS-CMS)" submitted to the Copyright Office on January 25, 2016 (Doc. 30.1 at 2-5); (2) a document indicating that Plaintiff's application for registration of VS-CMS was "pending" on April 28, 2016 (Doc. 30.1 at 1); and (3) a copy of a registration certificate issued by the Copyright Office for "VividSites CMS (VS-CMS)" reflecting a January 25, 2016 "effective date" (Doc. 35.1). According to Plaintiff, it omitted its copyright infringement claim from its SAC because counsel was unaware that "through other counsel [Plaintiff] had applied to register" the VS-CMS software with the Copyright Office (Doc. 30).

Defendants oppose Plaintiff's motion for leave to amend, arguing, inter alia, that the recently issued Copyright registration does not remedy Plaintiff's failure to complete its copyright registration before it filed this lawsuit, that Plaintiff's proposed MUTSA and unfair competitions claims lack an independent basis for federal jurisdiction, and that the SAC fails to state viable claims under the Copyright Act, RICO, MUTSA, or Missouri common law (Doc. 34).

9

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). In other words, leave to amend should "normally be granted absent good reason for denial. The classic 'good reasons' for rejecting an amendment are: 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment.'" Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000). Amendment is futile when, inter alia, the amended complaint could not withstand a motion to dismiss. Holloway v. Dobbs, 715 F.2d 390, 395 (8th Cir. 1983) (per curiam).

The Court will deny Plaintiff's motion for leave to amend its complaint for a third time. Initially, the Court notes that amendment would be futile as to Plaintiff's RICO claims because the proposed TAC does not remedy the SAC's failure to adequately plead mail or wire fraud as predicate offense, as discussed more fully above. See id.; see also Crest Constr. II, 660 F.3d at 353. The Court also notes that amendment of Plaintiff's complaint to reassert a copyright infringement claim may also be futile. The Copyright Act "requires copyright holders to register their works before suing for copyright infringement." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157, 163-69 (2010) (the Copyright Act's registration requirement is a non-jurisdictional precondition to filing a copyright infringement claim); see also 17 U.S.C. § 411(a) (no civil action for copyright infringement in any U.S. work shall be instituted until preregistration or registration of the copyright claim has been made). Here, Plaintiff applied for registration of the VS-CMS source code before it filed its original complaint; however, the Copyright Office did not approve the application and issue Plaintiff a registration until after this lawsuit had been initiated. At this stage of the proceeding, it is unclear whether Plaintiff's proposed copyright infringement claim would be subject to dismissal based on its failure to complete the registration

10

of VS-CMS before filing this lawsuit. There is currently a split among the U.S. Courts of Appeals as to whether the Copyright Act's registration requirement is satisfied upon a plaintiff's filing of a registration application, or instead upon the Copyright Office's subsequent approval or rejection of the application. Some courts have concluded that a plaintiff need only file a complete application for registration with the Copyright Office before bringing a copyright infringement suit. See Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 616-23 (9th Cir. 2010); Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 631 (7th Cir. 2003); Apple Barrel Prods., Inc. v. Beard, 730 F.2d 384, 386-87 (5th Cir. 1984). Other courts have concluded that a plaintiff can file suit only after its application for registration has been approved or rejected by the Copyright Office. See La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1200-08 (10th Cir. 2005), abrogated on other grounds by Muchnick, 559 U.S. at 154; see M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1489 (11th Cir. 1990). It appears that the Eighth Circuit Court of Appeals has not yet squarely addressed this issue. Therefore, to the extent Plaintiff seeks to reassert a copyright infringement claim, it is not entirely clear whether amendment would be futile.

The Court notes however that Plaintiff sought to assert a copyright infringement claim in its original complaint; that it omitted the copyright infringement claim from its first and second amended complaints based on Defendants' argument that it had not yet registered the VS-CMS source code with the Copyright Office; and that it now seeks to reassert its copyright infringement claim, alleging that it has only recently learned that it had filed an application with the Copyright Office before filing this lawsuit and that the application has since been approved. Notably, Plaintiff has not explained its failure to reasonably inquire as to whether it had applied for registration of VS-CMS before bringing this action, nor has it explained why it did not

11

investigate whether an application had been filed even after Defendants put it on notice of the registration issue in its motion to dismiss the original complaint. Plaintiff's delay in inquiring as to whether it had filed an application to register the VS-CMS source code with the Copyright Office was, at best, dilatory. For all of these reasons, the Court will deny Plaintiff's motion for leave to file a third amended complaint. See Popp Telcom, 210 at 943.

### C. Defendants' Request for Fees and Costs under the Copyright Act

Defendants seek an award of attorney's fees and costs under the Copyright Act, citing 17 U.S.C. § 505 (Doc. 27). According to Defendants, they are entitled to attorney's fees and costs because they are prevailing parties, given Plaintiff's decision to drop its copyright infringement claim from its SAC. In support of their request for fees and costs, Defendants emphasize that Plaintiff's failed to register the VS-CMS source code before initiating this suit. They further argue that, after learning that its copyright claim was subject to dismissal for failure to register, Plaintiff "unreasonably multiplied the proceedings and abused the judicial process by filing multiple amended complaints attempting to mask its real cause of action with preempted state law claims" (Docs. 28 at 16-17; 31 at 13-14). Plaintiff opposes Defendants' request for fees and costs, claiming that it relied on Defendants' statement that the VS-CMS source code had not been registered when it omitted its copyright infringement claim from the SAC, and that it now seeks to revive that claim based on its discovery that an application for registration had in fact been filed on its behalf before it filed this lawsuit (Doc. 33.1 at 7-8). Plaintiff also argues that Defendants have admitted that they conspired to misappropriate its propriety materials (Id.).

Section 505 authorizes the Court to award a reasonable attorney's fee to the prevailing party. 17 U.S.C. § 505. "The decision to award attorneys' fees to a prevailing party under § 505 is a matter for the district court's 'equitable discretion,' to be exercised in an evenhanded manner

12

by considering factors such as whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act." Action Tapes, Inc. v. Mattson, 462 F.3d 1010, 1014 (8th Cir. 2006) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 & n.9 (1994)). The Court may not award attorney's fees "as a matter of course," but must instead make "a more particularized, case-by-case assessment." Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985 (2016) (citing Fogerty, 510 U.S. at 533). The Court also may not treat prevailing plaintiffs and prevailing defendants any differently, as defendants should be encouraged to litigate meritorious defenses to the same extent plaintiffs should be encouraged to litigate meritorious claims of infringement. Id. (citing Fogerty, 510 U.S. at 527). Moreover, the Court should give "substantial weight" to the objective reasonableness of the arguments and positions taken by the losing party, while also taking into account all other relevant factors. Id. at 1984-89.

The Court will deny Defendants request for attorney's fees and costs. In light of the aforementioned circuit split on the issue of the Copyright Act's registration requirement and the apparent absence of binding authority from the Eighth Circuit on the issue, the Court concludes that Plaintiff's attempt to bring a copyright infringement claim was not objectively unreasonable. See Action Tapes, 462 F.3d at 1014. Moreover, even if the Court were to assume the objective unreasonableness of Plaintiff's initiation of this lawsuit after it had applied for registration but before its application was approved by the Copyright Office, the Court would nevertheless decline to award attorney's fees or costs in this case. See Kirtsaeng, 136 S. Ct. at 1989 (a court may deny fees under the Copyright Act even where the losing party offered unreasonable arguments). Plaintiff's claims were not frivolous, and there is no indication that Plaintiff harbored any improper motivations while litigating this case. Moreover, an award of fees and

13

costs would not be consistent with the purposes of the Copyright Act, as the Copyright Office has allowed Plaintiff to register the VS-CMS source code during the pendency of this proceeding. Under the facts of this particular case, the Court sees no need to compensate Defendants or to deter Plaintiff. The Court also notes that the now operative complaint does not include a claim under the Copyright Act. For these reasons the Court will deny Defendants' request for attorney's fees and costs under the Copyright Act. See id.; Fogerty, 510 U.S. at 534.

### D. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to file a Sur-reply (Doc. 33) and Motion to Incorporate an Exhibit to its Third Amended Complaint (Doc. 35) are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and for an Award of Attorneys' Fees and Costs under the Copyright Act (Doc. 27) is **GRANTED IN PART AND DENIED IN PART.** The motion is granted to the extent it seeks dismissal of this action, and denied to the extent it seeks an award of attorneys' fees and costs. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. 30) it **DENIED**.

Dated this 29th day of March, 2017.

_/s/ John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE